# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

DJUANA, J.[1],

        Plaintiff,

  v.

**NANCY A. BERRYHILL,** Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

        Defendant.

Case No. 3:17-cv-1842-SI

**OPINION AND ORDER**

Merrill Schneider, SCHNEIDER KERR & ROBICHAUX, P.O. Box 14490, Portland, Oregon 97293.
Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Djuana, J. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff protectively filed for SSI on November 4, 2011. AR 254. In her claim, Plaintiff alleged a disability onset date of January 15, 2004. AR 252. Plaintiff alleged disability due to anxiety; fibrosis; drug and alcohol problems; chronic pain; and bipolar disorder. AR 257. Plaintiff was born on September 25, 1971, and she was 32 years old as of the alleged disability onset date. AR 87. Plaintiff is currently 47 years old. *Id.*

Plaintiff's claim was denied initially on February 9, 2012, and upon reconsideration on August 8, 2012. Plaintiff's first hearing before an Administrative Law Judge ("ALJ") occurred on June 4, 2014, but was continued to allow Plaintiff to seek legal representation and for development of the record. AR 68-73. Plaintiff appeared before a new ALJ ("the ALJ") with the assistance of counsel on July 23, 2015. On September 22, 2015, the ALJ found Plaintiff not disabled and not entitled to SSI under the Social Security Act. AR 30.

Plaintiff then appealed the ALJ's decision to the Appeals Council and submitted an updated disability report. AR 311-318. The Appeals Council denied Plaintiff's request for review on September 13, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff subsequently filed a complaint in district court on November 16, 2017, seeking judicial review of the Commissioner's final decision denying Plaintiff's application for SSI.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not participated in substantial gainful activity since November 4, 2011. AR 22. At step two, the ALJ found the following severe medical impairments, which more than minimally affect Plaintiff's ability to work: left thumb carpometacarpal degenerative joint disease; left great toe degenerative joint disease; and substance abuse in remission. *Id.* The ALJ also concluded that Plaintiff's anxiety did not cause

more than minimal limitation to the Plaintiff's ability to perform basic work activities and thus was non-severe. AR 23.

At step three, the ALJ found that Plaintiff does not have any impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 24. The ALJ gave particular attention to Listing 1.02, major dysfunction of a joint, but concluded that Plaintiff's injuries did not satisfy the requirements for this listing. AR 24.

The ALJ then evaluated Plaintiff's RFC, and found that Plaintiff had an RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . including the ability to do the following. She can never climb ladders. She can occasionally climb stairs. She can frequently stoop, kneel, crouch and crawl. She can frequently handle. She can perform work that involves few workplace changes.

AR 24.

At step four, the ALJ considered Plaintiff's RFC, testimony from the vocational expert ("VE"), and the mental and physical demands of Plaintiff's past relevant work as a home attendant. AR 28. The ALJ concluded that Plaintiff's RFC precluded performance of Plaintiff's past relevant work. *Id.*

At step five, the ALJ considered Plaintiff's RFC, age, education, work experience, and the VE's testimony to determine that jobs exist in significant numbers in the national economy that Plaintiff could perform. AR 28-29. These jobs included work as a cashier, housekeeper, and small products assembler. AR 29. The ALJ also asked the VE what jobs would be available if someone with Plaintiff's characteristics were limited to sedentary work, rather than light work; the VE testified that work would be available as a charge account clerk, document preparer, and

final assembler. *Id.* Accordingly, the ALJ found that Plaintiff has not been disabled as that term is defined under the Social Security Act since November 4, 2011, the date of her application. *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred in the following general aspects of his decision: (A) improperly failing to classify many of Plaintiff's impairments as severe at step two; (B) improperly rejecting the medical opinions of Plaintiff's treating physicians; (C) failing to find that Plaintiff's impairments meet a listing at step three; (D) improperly evaluating Plaintiff's testimony about her symptoms; (E) improperly evaluating lay witness testimony from Plaintiff's mother; and (F) failing to present a complete hypothetical to the VE at step five.

## A. Severity of Plaintiff's Impairments

The ALJ evaluates at step two "whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If so, however, the ALJ proceeds with the sequential analysis. Thus, step two is merely a threshold determination meant to screen out weak claims. *Bowen*, 482 U.S. at 146-47.

Plaintiff argues that the ALJ in this case improperly failed to classify many of Plaintiff's medical and mental impairments as "severe" at step two. Plaintiff further argues that this error was harmful because these impairments affect Plaintiff's functioning and limitations, and the impairments formed the basis for Plaintiff's treating physician's opined limitations. Plaintiff essentially argues that later steps in the ALJ's sequential analysis would have taken a different turn if the ALJ had found more of Plaintiff's impairments "severe" at step two.

Plaintiff's argument "misunderstands the purpose of step two in the analysis." *Buck*, 869 F.3d at 1048. In *Buck*, the plaintiff had a second hearing before a new ALJ, who found additional severe impairments at step two but nonetheless arrived at the same RFC as the first ALJ; the

plaintiff unsuccessfully argued that the new severe impairments necessarily should have changed the RFC determination. *Id.* at 1048-49. Plaintiff's step two argument is similar: that the ALJ's RFC determination and other conclusions would have changed if the ALJ had classified more of Plaintiff's impairments as "severe." As the Ninth Circuit has explained, however:

> Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" [SSR] 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Id.* (emphasis in original) (citations omitted).

The purpose of step two is to screen out weak disability claims in their entirety—not to remove specific, poorly documented impairments from consideration in the sequential analysis. Because Plaintiff's entire claim for SSI was not "screened out" at step two, any failure by the ALJ to find additional severe impairments was harmless and does not present a basis for remand. *Id.* at 1049 (because "step two was decided in [Plaintiff's] favor . . . [h]e could not possibly have been prejudiced"). The ALJ considered all of Plaintiff's impairments—severe and nonsevere—in determining her RFC.

**B. Treating Physician Opinions**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more

weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th

Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and

is not inconsistent with other substantial evidence in the record, the treating physician's opinion

is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion

that is not contradicted by the opinion of another physician can be rejected only for "clear and

convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a

treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must still

provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d

at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while

doing nothing more than ignoring it, asserting without explanation that another medical opinion

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison*ͺ 759 F.3d at 1013.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157

F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his

conclusions. He must set forth his own interpretations and explain why they, rather than the

doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

(9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 1. Dr. Devarajan

Plaintiff first contends that the ALJ erred in discounting the opinions of Sumathi Devarajan, M.D., who has been Plaintiff's primary treating physician since 2004. AR 312; AR 372. Dr. Devarajan provided two opinions regarding Plaintiff's functioning. The first, from 2012, listed Plaintiff's diagnoses and opined simply that Plaintiff "will not be able to participate in any kind of activity which will involve her hand and foot joints." AR. 647. Dr. Devarajan prepared a more detailed opinion at the request of Plaintiff's counsel in 2015, which combined check-box assessments and written notes. AR 664-68. The ALJ rejected the 2012 opinion as conclusory and because the ALJ found that it conflicted with the level of functioning demonstrated by Plaintiff's daily activities, as detailed in a function report that Plaintiff submitted in 2011. AR 27. The ALJ rejected the 2015 opinion "for the same reasons." *Id.*

Non-examining state agency physicians Drs. Martin Kehrli and Lloyd H. Wiggins both opined that Plaintiff's physical impairments were non-severe. AR 93 (opinion of Dr. Kehrli); AR 81 (opinion of Dr. Wiggins). Because these opinions conflict with the 2012 and 2015 opinions of Dr. Devarajan, the ALJ was required to provide specific, legitimate reasons with substantial evidence to support his rejections of Dr. Devarajan's opinions. Specifically, the ALJ

needed to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings. *Reddick*, 157 F.3d at 725.

### a. Dr. Devarajan's 2012 Opinion

As noted above, the ALJ rejected the 2012 opinion of Dr. Devarajan because it was conclusory and conflicted with the level of daily activity described in Plaintiff's 2011 function report. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d 1228. Dr. Devarajan's 2012 opinion contained only one sentence, which suggested that Plaintiff cannot use her hands or feet at all. This is an incredibly short medical opinion, and the medical evidence in the record at that time did not suggest that Plaintiff suffered complete impairment of her hands and feet. *See, e.g.*, AR 315 (reporting in 2012 that Plaintiff can't move "as quick" or grab things "the same" as in 2011). Because Dr. Devarajan's 2012 opinion was brief, conclusory, and inadequately supported by clinical findings, the ALJ identified a specific, legitimate reason to reject its opined limitations. Because the ALJ provided at least one specific, legitimate reason, the Court need not decide whether the 2012 opinion was inconsistent with Plaintiff's 2011 function report.

### b. Dr. Devarajan's 2015 Opinion

Although the ALJ properly rejected the 2012 opinion for being brief, conclusory, and inadequately supported by clinical findings, the same reasoning does not necessarily support his decision to reject the 2015 opinion. The ALJ rejected the 2015 opinion for "the same reasons" as the 2012 opinion, meaning that the ALJ determined that the 2015 opinion was also conclusory and inconsistent with Plaintiff's daily living activities. AR 27.

The Court begins with the ALJ's first reason: that the 2015 opinion was brief and conclusory. Whereas the 2012 opinion offered only diagnoses and one unsupported, conclusory

sentence, the 2015 opinion provided a more detailed evaluation of Plaintiff's limitations. Although the 2015 opinion utilized a check-box form with short-answer comments, a check-box form "based on significant experience . . . and supported by numerous records . . . [is] entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013. Dr. Devarajan's check-box opinion reflects nearly a decade of treatment history. And although Plaintiff's counsel provided the form, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." *Reddick*, 157 F.3d at 726. Thus, unlike the 2012 opinion, the 2015 opinion was not brief, conclusory, or unsupported by medical evidence, and the ALJ could not properly reject the 2015 opinion for this reason.

The only remaining basis that the ALJ gave to reject the 2015 opinion was its inconsistency with Plaintiff's daily living activities. This kind of inconsistency can serve as a specific, legitimate reason to reject a doctor's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). In support of this conclusion, however, the ALJ referred only to his findings rejecting the 2012 opinion. AR 27. These findings used Plaintiff's 2011 function report as their benchmark for Plaintiff's daily activity level. AR 27. Inconsistences between a 2011 function report and a 2015 opinion perhaps could show that the 2015 opinion is unreliable, but the same inconsistences could also reflect worsening impairments during the intervening four years, with the later opinion arising from more recent observations.

Indeed, the record in this case indicates that Plaintiff's limitations may have worsened in the years after she submitted the 2011 function report. Plaintiff's additional filings from 2012 detail her worsening impairments. In these reports, Plaintiff stated that she had to wear braces on

both hands daily, AR 311, which caused her to "not only not work, but now cut out activities around the house and outside the home." *Id.* Plaintiff also reported that it took her one and one-half hour to get ready in the morning because of her slowed movement, decreased ability to hold objects, and constant pain in her hands and feet. AR 315. Plaintiff also noted that "I can't cook and clean [or] care for my grandchildren because I'm not able to use my hands [or] stand on my foot; the doctors required me to not do any activities using my hand or foot." AR 316. Finally, Plaintiff clarified that her hand and foot impairments had worsened, and as of 2012 prevented her from either working or completing household activities to the degree previously reported. AR 317.

Medical evidence of Plaintiff's decline in functioning after 2011 is admittedly sparse. The relative lack of treatment records from 2011 to 2015 may be attributable to Plaintiff's reported changes in health insurance coverage around 2012. AR 317. Nevertheless, in 2014, Plaintiff reported that her foot impairments were similar to those in 2012, if not worse. AR 662. The same year, Plaintiff reported that she had experienced hand pain "on and off" in the past four to five years, but in the last year her left hand had worsened, "cause[ing] constant cramps and swelling." AR 671.

Viewed together, record evidence suggests a decline in Plaintiff's functioning after she submitted the 2011 function report. This decline offers a plausible alternative explanation for the inconsistencies that the ALJ used to discredit Dr. Devarajan's 2015 opinion. The Commissioner argues that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. The Commissioner is correct that, in general, the ALJ's conclusions based on an ambiguous record are entitled to deference. The Court would defer ALJ in this case if he had reached his conclusions by "setting out a

detailed and thorough summary of the facts and conflicting clinical evidence . . . and making findings." *Reddick*, 157 F.3d at 725. The ALJ was required to review the entire record, summarize this conflicting evidence, and "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* The ALJ failed to fulfill these obligations. As noted above, the record contains ample evidence to suggest that the 2015 opinion reflected Plaintiff's declining functioning—evidence that conflicts with the ALJ's conclusions. The ALJ failed adequately to reconcile this conflicting evidence, and thus did not provide specific, legitimate reasoning with substantial supporting evidence to reject Dr. Devarajan's 2015 opinion.

The ALJ thus erred in rejecting Dr. Devarajan's 2015 opinion. This error was not harmless and necessitates remand because the 2015 opinion contained limitations more severe than the ALJ included in his RFC. This supports the inference that, but for the ALJ's rejection of the 2015 opinion, Plaintiff's RFC may have been more restricted. On remand, the ALJ should first review the entire record to determine Plaintiff's more recent levels of daily activity, rather than relying on the 2011 function report alone. If the ALJ still concludes that Dr. Devarajan's opinion from 2015 is inconsistent with Plaintiff's daily living activities, the ALJ must explain in why the 2015 opinion does not accurately reflect Plaintiff's decline in functioning.

When considering whether Plaintiff's functioning declined over time, the ALJ may find that Plaintiff's daily activities in 2011 show that she was not disabled at that time, but that Plaintiff became disabled on a later date. The fact that Plaintiff alleges she became disabled on January 15, 2004, and then alleged in her 2015 hearing that her functioning began to further decline in late 2011, complicates this determination. Four year passed between Plaintiff's 2011 function report and her 2015 testimony, however, and she may not have accurately recalled the timeline of her worsening limitations. Given the conflict between Plaintiff's alleged onset date

and the date when her impairments appear to worsen in the record, the ALJ may need to

determine whether Plaintiff became disabled on a later date than alleged. While "[t]he starting

point in determining the date of onset of disability is the individual's statement as to when

disability began," if "the medical or work evidence is not consistent with the allegation,

additional development may be needed to reconcile the discrepancy. . . . [T]he established onset

date must be fixed based on the facts and can never be inconsistent with the medical evidence of

record." SSR 83-20, 1983 WL 31249 (January 1, 1983); *see, e.g.*, *Rustamova v. Colvin*, 111 F.

Supp. 3d 1156, 1160 (D. Or. 2015) (noting that the ALJ found plaintiff disabled beginning

in 2011, rather than in 2004 as alleged).

### 2. Dr. Seuferling

Chris Seuferling, DPM, began treating Plaintiff as her podiatrist in December 2011.

AR 745. On a check-box form from Plaintiff's counsel, identical to the form used for

Dr. Devarajan's 2015 opinion, Dr. Seuferling opined in 2015 that Plaintiff had a range of

limitations. AR 745-49. These opined limitations were generally more severe than those that the

ALJ incorporated into Plaintiff's RFC. Plaintiff argues that the ALJ lacked a specific, legitimate

reason with substantial evidence to reject the opinion of Dr. Seuferling.

The ALJ gave little weight to the opinion of Dr. Seuferling "for the same reasons" that

the ALJ gave little weight to Dr. Devarajan's opinions. AR 27. Dr. Seuferling's opinion that

Plaintiff could only walk one hour per day was inconsistent, the ALJ concluded, with Plaintiff's

activities of daily living, as described in the 2011 function report. Thus, the ALJ appears to have

rejected Dr. Seuferling's opinion as (1) brief, conclusory, and unsupported by medical evidence

and (2) inconsistent with Plaintiff's activities of daily living, as shown on her 2011 function

report.

Having already found this reasoning flawed with respect to Dr. Devarajan's 2015 opinion, the Court finds the same reasoning similarly flawed here. Dr. Seuferling's opinion was on the same form as Dr. Devarajan's 2015 opinion and reflected a similarly lengthy treatment relationship; Dr. Seuferling's opinion was neither brief nor conclusory. Furthermore, the ALJ has again compared a four-year-old description of Plaintiff's daily functioning with a recent medical opinion and, finding that the two were at odds, rejected the medical opinion instead of considering the entire record to determine whether Plaintiff's daily functioning had changed in the interim. As explained above, the ALJ erred in doing so. On remand, the ALJ should review the medical record, including Plaintiff's updated function reports, to determine whether Dr. Seuferling's opinion is inconsistent with Plaintiff's daily functioning at or near the time that he gave the opinion.

## C. Step Three Listings

At step three, the ALJ must determine whether one or more of a claimant's severe impairments "meets or equals" one of the presumptively disabling impairments listed in the Social Security Act regulations. *Kennedy v. Colvin,* 738 F.3d 1172, 1175 (9th Cir. 2013); *see* 20 C.F.R. § 416.926 (describing when a claimant's impairments are medically equivalent to a listed impairment). The "[l]isted impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy*, 738 F.3d at 1176 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532, (1990)).

The ALJ determined at step three that none of Plaintiff's impairments meet or equal the listed impairments. AR 24. To reach this conclusion, the ALJ gave "particular attention" to Listing 1.02, major dysfunction of a joint, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, and Plaintiff does not argue that any other listing should apply. The ALJ determined that available medical

evidence did not demonstrate that Plaintiff's impairments met the criteria for Listing 1.02. *Id.*

Plaintiff disagrees, citing an opinion from her treating podiatrist, Dr. Seuferling, that Plaintiff's

foot impairments meet the criteria for Listing 1.02. AR 747.

As explained above, the ALJ should reevaluate on remand whether to reject the opinion

of Dr. Seuferling. Even if, however, the ALJ decides on remand to credit to Dr. Seuferling's

opinion with respect to Plaintiff's limitations in general, the record does not support

Dr. Seuferling's conclusion that Plaintiff meets or equals Listing 1.02. The listing has five

criteria: (1) gross anatomical deformity, (2) chronic joint pain and stiffness with signs of limited

motion in the affected joint(s), (3) findings on appropriate medically acceptable imaging of joint

space narrowing, bony destruction, or ankyloses in the affected joint(s), and (4) involvement of

one major peripheral weight-bearing joint (*i.e.* hip, knee, or ankle) that (5) results in an inability

to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 1.02. Inability to ambulate

effectively is defined as follows:

> (1) Definition. Inability to ambulate effectively means *an extreme limitation of the ability to walk*; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be *capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living*. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as

> shopping and banking, and the inability to climb a few steps at a
> reasonable pace with the use of a single hand rail. The ability to
> walk independently about one's home without the use of assistive
> devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 1.00(B)(2)(b) (emphasis added).

The medical record indicates that Plaintiff can walk at reasonable pace sufficient for activities of daily living. For example, in 2015, Dr. Devarajan opined in that Plaintiff could stand or walk up to 30 minutes, AR 665, and Dr. Seuferling opined that that Plaintiff could stand or walk for one-to-two hours. AR 746. While these opinions may indicate limitations that could impact Plaintiff's ability to work, they at least show that Plaintiff can walk well enough to accomplish daily living activities. This meets the minimum standard for walking ability under Listing 1.00(b)(2)(B)(2). Because Plaintiff's walking ability meets this minimum standard, her impairments have not "result[ed] in an inability to ambulate effectively," as those terms are defined. Accordingly, Plaintiff's impairments do not meet or equal Listing 1.02, and the ALJ did not err in reaching this conclusion.

## D. Plaintiff's Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ found first that Plaintiff's impairments could reasonably be expected to produce some the symptoms that Plaintiff described. AR 25. Second, however, the ALJ determined that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not entirely credible. *Id.* The ALJ gave three reasons to discredit Plaintiff's testimony: (1) inconsistency with medical evidence; (2) discrepancies in Plaintiff's testimony; and (3) non-disability barriers to employment. AR. 25-26. Plaintiff responds that the ALJ conducted an improper credibility evaluation that ignored medical evidence, cherry-picked from the record, and relied on an erroneous understanding of Plaintiff's daily functioning. For the reasons described below, the ALJ erred in evaluating the Plaintiff's symptom testimony.

### 1. Inconsistencies with Medical Evidence

The ALJ first found that medical evidence in the record did not support the severity of claimant's alleged symptom. Consistency with objective medical evidence is a relevant factor for evaluating a plaintiff's subjective symptom testimony, *see Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), but "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."

*Reddick*, 157 F.3d at 722. Regardless, "the treatment records must be viewed in light of the overall diagnostic record" rather than cherry-picked for support. *See Ghanim*, 763 F.3d at 1164 (9th Cir. 2014).

The ALJ cited first to several treatment notes, which were almost exclusively from 2011. For example, the ALJ refers to a wrist and finger mobility examination from February 7, 2011, which showed full range of motion, *see* AR 519, and a visit to Dr. Seuferling on December 2, 2011, which showed mild degenerative joint disease in Plaintiff's left foot. AR 596. The ALJ provided only minimal review of later medical records, however, and appears to have selectively cited records inconsistent with Plaintiff's testimony while omitting supporting evidence.

For example, when citing to an August 2012 exam, the ALJ noted only that mild swelling was detected around the left thumb. The ALJ, however, omitted the examining physician's notes of general tenderness on palpation and significant tenderness with movement. AR 604. The ALJ used a treatment note from October 2014, in which Plaintiff described her hand pain as "on and off" beginning in 2009 or 2010, to discredit Plaintiff's 2015 hearing testimony that her pain was constant. The ALJ omitted the next sentence of the treatment note, which stated that Plaintiff's hand pain had become "worse" in the last year and caused "constant cramps and swelling." AR 671.

Similarly, the ALJ reviewed at least one treatment note from 2015, but took a small part of a physical exam out of context to conclude that Plaintiff was, in a general sense, "not in any apparent distress." *See* AR 26 (citing AR 751). The ALJ also discussed from that same treatment note that the physician diagnosed merely mild hand and wrist degenerative joint disease. AR 26. The ALJ, however, failed to mention the physician's diagnosis, in the same treatment note, of *moderate* degenerative disk disease in the carpometacarpal joint, as well as examination notes

describing Plaintiff's "painful [carpometacarpal] joint" with "prominent bone spurs." AR 751. Finally, the ALJ cited a record from 2011 that noted that Plaintiff's foot and toe joints had intact muscular strength and displayed no crepitus, AR 25 (citing AR 422), but failed to discuss a 2014 report from Dr. Seuferling noting pain on palpation, limited range of motion, pain on movement, and crepitus in the same joints. *See* AR 662.

As these examples show, the ALJ's decision selectively cited treatment notes that supported his conclusion, without discussing contrary evidence, or providing reasons for disregarding the contrary evidence. The ALJ thus did not provide substantial evidence to support his conclusion. On remand, the ALJ should "weigh[] both the evidence that supports and the evidence that detracts" from his conclusions, and make a decision based on the entire record. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

## 2. Discrepancies in Plaintiff's Testimony

The ALJ next concluded that Plaintiff's general lack of candor discredited her symptom testimony. Under SSR 96-7p, 1996 WL 374186 (June 2, 1996), which governs decisions rendered before March 16, 2016, an "ALJ may consider . . . ordinary techniques of credibility evaluation, such as a claimant's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid." *See Smolen*, 80 F.3d at 1284. "A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) (discussing inconsistency between Popa's testimony that she could not drive because her license was suspended and her comment to a treating physician that she had driven).

The ALJ pointed to two specific inconsistences. First, Plaintiff testified in 2015 that her hand cramps made her handwriting messy, but the ALJ concluded that her 2011 function report was very legible. AR 26. As an initial matter, the relative messiness of handwriting is subjective,

and Plaintiff's 2011 handwriting is legible but not neat. Thus, it is unclear that Plaintiff's 2015 testimony was inconsistent. Even if it were, this minor inconsistency would be between 2011 evidence and 2015 testimony. The evidence as a whole, as discussed above, suggests that Plaintiff's hand functioning had declined during the intervening years, which also would render her testimony not inconsistent.

The second inconsistency involves Plaintiff's testimony regarding her history of drug and alcohol use. *Id.* In her testimony, Plaintiff concedes that she used crack cocaine, alcohol, and marijuana heavily in the past, but "stopped doing everything" in 2005. As the ALJ noted, AR 26, Plaintiff told a psychological evaluator as recently as 2010 that she had "not stopped drinking all the way, and still smoke[ed] pot almost every day." AR 380. Reading Plaintiff's 2015 testimony in context, it is unclear whether she meant that she literally ceased consuming all drugs and alcohol in 2005, or merely that her severe substance abuse ended around that time. In any case, the ALJ is correct that Plaintiff did not fully disclose in the 2015 hearing her ongoing struggle with drug and alcohol addiction. At most, this presents the kind of "single discrepancy" found in *Popa*, which fails to justify discrediting claimant's entire symptom testimony. *See Popa*, 872 F.3d at 906-07. Without more, Plaintiff's inconsistent prior statement does not provide a clear and convincing reason, supported by substantial evidence, to discredit Plaintiff's symptom testimony.

### 3. Non-Disability Barriers to Employment

The final reason that the ALJ found Plaintiff's testimony not credible was that Plaintiff had a DUI conviction and a suspended license. The ALJ concluded that these facts created a barrier to employment that was unrelated to Plaintiff's disability. The ALJ also noted that Plaintiff drove to a doctor's appointment despite her suspended license, which the ALJ

concluded was evidence that Plaintiff was increasing the risk of additional infractions and barriers to employment.

An ALJ may reject the symptom testimony of a claimant who alleged that his or her symptoms prevented gainful employment, but who stopped work for reasons other than the alleged symptoms and limitations. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The present record, however, is distinguishable. While Plaintiff has a criminal conviction, which could create a barrier to employment, nothing in the record suggests that Plaintiff lost her past jobs because of her conviction. Nor does it appear that Plaintiff's suspended license or criminal conviction have prevented her from applying for or obtaining gainful employment after she became unemployed. A speculative risk that Plaintiff's behavior might, in the future, create further barriers to employment is not a clear and convincing reason to discredit testimony about Plaintiff's current physical and mental impairments.

**E.  Lay Witness Testimony**

Plaintiff next contends that the ALJ erred in rejecting the testimony of a lay witness, Plaintiff's mother. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* "If the ALJ wishes to discount the testimony of the lay witnesses, [the ALJ] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).

Plaintiff's mother, Lanita S., provided a third party function report in 2011, which detailed Plaintiff's impairments and daily living activities. The ALJ gave "partial weight" to this report, but stated that the report supports the RFC. Plaintiff argues that the ALJ's treatment of the third-party function report was a *de facto* rejection without a germane reason. The Commissioner responds that the ALJ did not reject the testimony of Lanita S.; rather, as the ALJ interpreted the testimony, the testimony of Lanita S. was consistent with and supported the RFC. The Commissioner further argues that, because the ALJ interpreted the testimony, the Court must defer to the ALJ. *See Magallanes*, 881 F.2d at 750 ("The ALJ is responsible for determining credibility and . . . [and] for resolving ambiguities."); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (noting that the ALJ's resolution of ambiguity in testimony was entitled to deference).

The first question is whether the ALJ rejected the testimony of Lanita S., or simply resolved ambiguities in her testimony and in doing so concluded that her testimony was consistent with the RFC. In *Orteza*, which the Commissioner cites for support, one of the plaintiff's treating physicians opined that the plaintiff could perform "sedentary work." *Id.* It was unclear in *Orteza* whether the physician meant "sedentary work" as the terms is commonly understood or as it is defined in 20 C.F.R. § 404.1567(a) (1994). This was a clear ambiguity, and the ALJ's resolution of it was entitled to deference. *Id.* at 750-51.

The present case is distinguishable. The ALJ did not identify or interpret ambiguous testimony in the third-party function report, and the report contained evidence of limitations inconsistent with the RFC. For example, the report indicated that the Plaintiff had a short attention span, AR 294, and experienced constant foot pain. AR 293. When asked to check boxes indicating the mental and physical attributes that Plaintiff's disability affects, Lanita S. checked,

among others, lifting, squatting, bending, reaching, and kneeling. AR 294. In the RFC, the ALJ concluded that Plaintiff can stoop, kneel, crouch, handle, and crawl frequently.

Because Lanita S. attested to limitations that the ALJ did not include in the RFC, the ALJ necessarily rejected the portions of Lanita S.'s third party function report that were inconsistent with the RFC. An ALJ's may not ignore portions of lay witness testimony that contradict the ALJ's ultimate description of a claimant's abilities in the RFC. *See Stout*, 454 F.3d at1054.

The ALJ did not acknowledge the implicitly rejected portions of Lanita S.'s testimony and did not provide a germane reason for rejecting them. Accordingly, the ALJ improperly rejected the testimony of Lanita S. On remand, the ALJ must credit or provide a germane reason to reject part or all of Lanita S.'s testimony.

## F.  Step Five Analysis

In her last argument, Plaintiff contends that the ALJ erred in posing an incomplete hypothetical to the VE at step five. The ALJ's hypothetical to the VE must reflect all of the claimant's limitations, both physical and mental, that the record supports. *See Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value . . . ." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citation omitted). Because the ALJ improperly rejected the testimony of Plaintiff, her mother, and her treating physicians, limitations alleged in those sources were left out of the ALJ's hypothetical to the VE. As the hypothetical may change on remand after the ALJ reevaluates the improperly considered testimony and opinions, the Court need not decide Plaintiff's claim of error at step five.

### G. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999.. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the testimony of Plaintiff, her mother, and her treating physicians. The Court, however, finds that there are remaining conflicts and ambiguities that need be resolved. Specifically, it remains

unclear whether a later onset date may better reflect Plaintiff's decline in function, and whether later record evidence supports Plaintiff's subjective symptom testimony or lay witness testimony. Thus, remanding for further proceedings consistent with this opinion is more appropriate than an award of immediate benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of January, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge